Hearing Date/Time: November 6, 2019 at 2:30 p.m.

Jerry Montag
SEYFARTH SHAW LLP
620 8th Avenue
New York, NY  10018
Telephone:  (212) 218-4646
Facsimile:  (917) 344-1339
Email: jmontag@seyfarth.com

*Attorneys for S III Capital LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WILLOUGHBY ESTATES LLC,<br><br>       Debtor. | Chapter 11<br><br>Case No. 19-45886 (CEC) |

**S III CAPITAL LLC'S MOTION TO DISMISS BANKRUPTCY CASE**
**OR, ALTERNATIVELY, FOR RELIEF FROM AUTOMATIC STAY**

Pursuant to 11 U.S.C. §§ 362(d) and 1112 and Federal Rule of Bankruptcy Procedure 9014,

S III Capital LLC ("S III Capital"), by its undersigned attorneys, Seyfarth Shaw LLP, hereby moves

to dismiss this case as having been filed in bad faith and without legal authority or, alternatively, for

relief from the automatic stay so that S III Capital may enforce the judgment of foreclosure in its

favor and promptly conduct a foreclosure sale of the single-asset real property owned by the Debtor

Willoughby Estates LLC (the "Debtor").  In support of this motion, S III Capital states as follows:

## **INTRODUCTION**

1.  On September 26, 2019, Raphael Barouch Elkaim ("Elkaim"), Binyomin Halpern

("Halpern"), and Binyomin Schonberg ("Schonberg") initiated this putative single-asset real estate

bankruptcy case by filing a Chapter 11 petition as alleged co-managers of the Debtor.  This

bankruptcy case marks at least the third attempt by Elkaim, Halpern, and Schonberg to litigate their

disputes with Yechezkel Strulovich (a/k/a Chaskiel Strulovitch) ("Strulovitch") and Yechiel

Oberlander (also known as Mici or Mihay Oberlander) ("Oberlander") over apparently failed investments in real property. Elkaim, Halpern, and Schonberg certainly may pursue Strulovitch and Oberlander for alleged fraud, but this bankruptcy case and this Court—as with at least two prior cases and courts—is ***not*** the appropriate forum.

2.        In particular, on April 10, 2017, Elkaim, Halpern, and Schonberg, individually and derivatively on behalf of numerous limited liability companies, filed suit against, among others, Strulovitch, Oberlander, and ***this Debtor***.[1]  (*See Schonberg, et al. v. Strulovich, et al.*, No. 17-cv-2161 (E.D.N.Y.) (the "Federal Action"); *see also* Local Rule 1007-4 Declaration from Elkaim, ECF No. 7 ("Elkaim Declaration"), at ¶¶ 23, 35.)  Elkaim references the Federal Action in his Declaration to this Court, but noticeably absent from his Declaration is the fact that Judge Amon of the U.S. District Court for the Eastern District of New York ordered that Elkaim, Halpern, Schonberg, and other plaintiffs pursue their claims either in arbitration or in state court (depending on whether the particular claim is subject to an arbitration agreement).[2]

3.        Apparently displeased with the prospects of pursuing their fraud claims in arbitration or state court litigation, Elkaim, Halpern, and Schonberg then sought to intervene in S III Capital's foreclosure action against this Debtor.  (*See also* Elkaim Declaration, at ¶¶ 6, 24-29.)  Again, in his declaration to this Court, Elkaim references the prior action, but fails to inform this Court that his,

---

[1] Elkaim, Halpern, and Schonberg claim to be creditors of the Debtor over which they now assert control.  On October 28, 2019, Strulovitch, by counsel, appeared in this case.

[2] Judge Amon entered a thorough Memorandum Opinion and Order on November 2, 2017. (*See* Federal Action, at ECF No. 257.)  In summary, some claims were directed to arbitration, and the remaining claims were dismissed without prejudice to refiling in state court.  S III Capital believes that Elkaim, Halpern, and Schonberg never proceeded with arbitration or a separate state court action, as directed by the District Court, but even if they had, they presumably were unsuccessful given the filing of this case.

Halpern's, and Schonberg's attempts to litigate their claims against Strulovitch in another improper forum yet again were rejected by the court.[3]

4.    Undeterred by those failed efforts, Elkaim, Halpern, and Schonberg initiated this bankruptcy case.  This Court should dismiss this bankruptcy case for at least two reasons.

5.    First, the primary question for this Court is whether Elkaim, Halpern, and Schonberg possessed the requisite managerial authority to file a bankruptcy petition on behalf of the Debtor.  Based on the current record, S III Capital submits that this question should be answered in the negative.  According to Elkaim's Declaration filed in this case, Elkaim, Halpern, Schonberg, and other unidentified "investors" took undisclosed and unsubstantiated "steps necessary" to oust the Debtor's actual managers "just before this case was filed."  (*See* Elkaim Declaration, at ¶ 30.)  Nothing in the current record indicates whether Elkaim, Halpern, and Schonbeg had authority to file this bankruptcy case, and if they did not, then the case must be dismissed.

6.    Second, even if Elkaim, Halpern, and Schonberg had the requisite authority to place the Debtor into bankruptcy, they nonetheless filed this bankruptcy case in bad faith.  This case quite plainly is another attempt by Elkaim, Halpern, and Schonberg to pursue Strulovitch and an attempt to frustrate the judgment of foreclosure entered on September 19, 2019, by the New York Supreme Court, in favor of S III Capital.  Indeed, Elkaim concedes to this Court in his Declaration that this case was filed because "a foreclosure sale of the property owned by [the] Debtor is imminent." (Elkaim Declaration, at ¶ 6.)  The sale of the Debtor's sole asset—a parcel of real property located at 525 Willoughby Avenue in Brooklyn, New York (the "Property")—was previously scheduled for October 17, 2019.  (*See* Elkaim Declaration, at ¶ 6.)  Additionally, in light of the prior litigation, the

---

[3] Elkaim, Halpern, and Schonberg moved the state court to extend the time for the Debtor to answer S III Capital's foreclosure complaint so that Willoughby Estates Operations LLC, at the purported direction of Elkaim, Halpern, and Schonberg, could defend the foreclosure on a derivative basis.  The New York Supreme Court denied their motion, as reflected in the short form order attached hereto as **Exhibit A**.

recent steps apparently taken by Elkaim, Halpern, and Schonberg to oust the Debtor's existing management "in the past few days" leading up to the bankruptcy filing, (*see* Elkaim Declaration, at ¶ 30), are incredibly suspicious, to say the least.  In short, this bankruptcy case has all the hallmark attributes of a bad faith filing that must be dismissed.

7.     Finally, if the Court decides not to dismiss this bankruptcy case, then the Court should nonetheless grant S III Capital relief from the automatic stay to enforce its judgment of foreclosure and conduct its foreclosure sale with respect to the Property.

## BACKGROUND

8.     The Debtor is a New York limited liability company and the owner of the Property. (*See* Elkaim Declaration, at ¶ 5.)[4]  The Property is the Debtor's only asset, and the Debtor is a "single asset real estate" debtor as that term is defined in 11 U.S.C. § 101(51B).  (*See* Voluntary Chapter 11 Petition, ECF No. 1 (the "Petition"), at No. 7.)

9.     Pursuant to the Debtor's operating agreement, the only two members of the Debtor are CSRE LLC ("CSRE")  and Willoughby Estates Operations LLC ("Operations LLC").  (*See* Federal Action, ECF No. 196 (Declaration of Yechezkel Strulovitch ("Strulovitch Declaration")), at ¶ 4 of Ex. 7 ("Debtor's Operating Agreement").)[5]  CSRE holds a fifty-four percent (54%) membership interest in the Debtor, and Operations LLC holds a forty-six percent membership interest in the Debtor.  (*See id.* at Schedule A; Elkaim Declaration, at ¶ 12.)

---

[4] S III Capital does not concede the truth of the statements set forth in the Elkaim Declaration and reserves the right to challenge such statements at a later date, if necessary. Nonetheless, the statements constitute binding admissions that Mr. Elkaim is precluded from challenging.

[5] A true and correct copy of the Debtor's Operating Agreement submitted with the Strulovitch Declaration is attached hereto as **Exhibit B**.  S III Capital notes that at the time of its loan, S III Capital received from Strulovitch a consent document and an operating agreement for the Debtor, both of which identify Strulovitch as the Debtor's sole and managing member.  S III Capital does not concede the truthfulness of the Debtor's Operating Agreement submitted with the Strulovitch Declaration.  However, regardless which agreement is correct, neither reflects any membership interests or authority in favor of Elkaim, Halpern, or Schonberg.

10.     In the Debtor's Operating Agreement, CSRE is designated as the sole managing member of the Debtor.  (*See* Debtor's Operating Agreement, at ¶ 5(a)(i) ("The Owners agree that the business and affairs of the Company shall be managed by CSRE (the 'Managing Member')."); *see also* Elkaim Declaration, at ¶ 12.)  Neither Operations LLC nor any other individual or entity has any authority under the Debtor's Operating Agreement to manage the Debtor or otherwise make decisions on the Debtor's behalf.  (*See generally id.*)  Furthermore, the Debtor's Operating Agreement does not set forth a mechanism or protocol for the removal or replacement of CSRE as the Debtor's sole managing member.

11.     Furthermore, in the Debtor's Operating Agreement, Strulovitch and Oberlander are identified as the co-managing members of Operations LLC.  (*See id.* at ¶ 5(b)(i), (iii); *see also* Federal Action, ECF No. 192 (Second Amended Complaint filed by Elkaim, Schonberg, Halpern and others), at ¶ 27 ("Individual Defendants [Strulovitch and Oberlander]" are "managers of the LLC Plaintiffs [including Operations LLC]")).  No mechanism or protocol for the removal or replacement of Strulovitch and Oberlander as co-managing members of Operations LLC is set forth in the Debtor's Operating Agreement.

12.     Based on the foregoing, it appears that Elkaim, Schonberg, and Halpern were not the managing members of Operations LLC or the Debtor and, at least until very recently (if at all), had no authority in the management of either entity.  In the Elkaim Declaration, Elkaim states as follows:

> In the past few days, the investors took the steps necessary to oust Oberlander and Strulovitch as the manager of Operations.  Once that happened, Operations, together with investors who had purchased additional shares in the Debtor, signed resolutions ousting CSRE and Strulovitch as managers of the Debtor and replaced them with me, Binyomin Halpern, and Binyomin Schonberg as co-managers.  These resolutions became effective just before this case was filed.

(Elkaim Declaration, at ¶ 30.)  Elkaim does not provide any information what specific steps were taken or the identity of the "investors" who took such steps and/or purchased shares in the Debtor and/or whether such steps were valid under the Debtor's Operating Agreement, and otherwise.

13.    On June 3, 2016, the Debtor obtained a mortgage on the Property from S III Capital. (*See* Elkaim Declaration, at ¶ 17.)  In May 2017, on account of the Debtor's breach of its obligations in connection with the mortgage, S III Capital filed a foreclosure action in New York state court.  (*See id.* at ¶ 24.)  S III Capital and the Debtor resolved that foreclosure action pursuant to a negotiated settlement between S III Capital and the Debtor, as memorialized within a Withdrawal of Notice of Default and Affirmation of Loan Documents (the "Withdrawal Agreement").  (*See id.* at ¶ 25.)

14.    By March 2018, the Debtor was in default of the Withdrawal Agreement, and S III Capital commenced a new foreclosure action in New York state court.  (*See id.* at ¶¶ 26-27.)  As noted above, Elkaim, Halpern, and Schonberg tried to intervene in the foreclosure action, but the state court rejected their efforts.  (*See supra* n.3.)  The Debtor did not contest the foreclosure action, and on September 19, 2019, the New York state court entered a judgment of foreclosure in favor of S III Capital.  (*See id.* at ¶¶ 6, 29.)[6]  After entry of the foreclosure judgment, S III Capital noticed a foreclosure sale for October 17, 2019.  (*See* Elkaim Declaration, at ¶ 6.)  Notably, Elkaim, Halpern, and Schonberg were served with notice of the entry of the foreclosure judgment and did nothing to contest or appeal that event.  In a transparent attempt to forum shop, Elkaim, Halpern, and Schonberg have now turned to this Court to try to press their claims against Strulovitch.

---

[6] The Court can and should take judicial notice of the judgment of foreclosure issued in favor of S III Capital.  *See U.S. v. Merrick Sponsor Corp.*, 421 F.2d 1076, 1079 n.2 (2d. Cir. 1970) (taking judicial notice of judgment of foreclosure); *Gordon v. First Franklin Fin. Corp.*, No. 15-CV-775, 2016 U.S. Dist. LEXIS 25621, at *3 n.2 (E.D.N.Y. Feb. 29, 2016) (taking judicial notice of recording page, recorded mortgage, judgment of foreclosure, and other public records).  A copy of S III Capital's judgment of foreclosure is attached hereto as **Exhibit C**.

15.     To that end, on September 26, 2019, a "voluntary" Chapter 11 petition was filed on behalf of the Debtor by Elkaim.  (*See, e.g.*, Petition, at 4 (signed by Elkaim as "co-manager"); Local Rule 1007-4 Declaration of Raphael Barouch Elkaim ("Elkaim Declaration"), ECF No. 7, at ¶ 30 (Elkaim, Halpern, and Schonberg allegedly installed as managers "just before this case was filed").) The Debtor is described in the petition as a "Single Asset Real Estate" business, as that term is defined in 11 U.S.C. § 101(51B).  (*See* Petition, at No. 7.)

16.     Attached to the Debtor's Petition (ECF No. 1-2) are four certifications of resolution purporting to represent a majority of the members of the Debtor and authorize Elkaim, Halpern, and Schonberg to file the Petition.  Those certifications are executed by the following individuals and entity (and their alleged membership interests in the Debtor): Halpern (0.45% member); Schonberg (3.6% member); Jacob Schonberg (1.35% member); Bertha Schonberg (1.35% member); and Operations LLC (45% member) (executed by Elkaim, Halpern, and Schonberg, each as "Manager" of Operations LLC).  (*See* ECF No. 1-2.)

17.     On October 23, 2019, S III Capital obtained an Appraisal of the Property from CBRE Group Inc. ( "CBRE"), dated October 23, 2019.  A copy of the Appraisal is attached as **Exhibit 1** to the contemporaneously filed Declaration of Matan Kurman, a vice president of S III Capital (the "Kurman Declaration").  CBRE has concluded the market value of the Property at this time totals $1.85 million, which is less than the approximately $1.90 million in principal, interest, and costs that the Debtor owes to S III Capital.[7]

## ARGUMENT

18.     As set forth below, this case should be dismissed for at least three reasons: (1) Elkaim, Halpern, and Schonberg apparently lack the proper authority to file a bankruptcy

---

[7] This figure does not include the legal fees incurred by S III Capital, which fees to date exceed $100,000.  S III Capital does not waive its right to calculate and pursue the full value of its claim at a later date.

petition on behalf of the Debtor; (2) even if they had such authority, the bankruptcy case was filed

in bad faith to stall S III Capital's foreclosure sale with respect to the Debtor's only asset and as an

attempted improper shortcut in Elkaim, Halpern, and Schonberg's prosecution of fraud and other

claims against Strulovitch and Oberlander; and/or (3) in the alternative, if the Court is not inclined

to dismiss this case, then S III Capital nonetheless should be granted relief from the automatic stay

in order to conduct and conclude its foreclosure sale.

I.    **On The Current Record, This Case Was Filed Without Proper Legal Authority And, Thus, Should Be Dismissed.**

19.    Section 1112(b) of the Bankruptcy Code provides that a bankruptcy case may be

dismissed for "cause" and provides a non-exhaustive list of possible grounds.  *See* 11 U.S.C.

§ 1112(b).  "[L]ack of corporate authority to file [a bankruptcy petition] is an independent ground

for dismissal of a bankruptcy case filed by a corporation."  *In re NNN 123 N. Wacker, LLC*, 510

B.R. 854, 858 (Bankr. N.D. Ill. 2014) (citing *Price v. Gurney*, 324 U.S. 100, 106 (1945)); *see also*

*In re Raljoed Realty Co.*, 277 F. Supp. 225, 226 (S.D.N.Y. 1967), *aff'd per curiam sub nom. In re*

*Park Towers Corp.*, 387 F.2d 948, 967 (2d Cir. 1967) (bankruptcy subject to dismissal given lack of

authority to file petition).

20.    "The authority to file a bankruptcy petition on behalf of a corporation must derive

from state corporate governance law, [collecting cases], and the corporate by-laws, [citation

omitted].  The same is true for an LLC."  *Catalyst Lifestyles Sport Resort, LLC v. Sherrard*, No. 18-

CV-302, 2019 U.S. Dist. LEXIS 86036, at *10 (N.D. Ind. May 22, 2019) (citing *NNN 123 N.*

*Wacker*, 510 B.R. at 858); *see also In re E. End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y.

2013) (state law governs requisite authority to file petition); *In re Am. Globus Corp.*, 195 B.R. 263,

265 (Bankr. S.D.N.Y. 1996) (same); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr.

D. Ore. 2003) (same).

21.     Under New York law, the particular limited liability company's operating agreement governs the members' conduct and relationships and also the allocation of authority to manage and make decisions on behalf of the company.  *See* New York Limited Liability Law §§ 401-704 (stating "except as provided in the operating agreement," "unless otherwise provided in an operarint agreement, and the like).  If the operating agreement is silent with respect to an issue, then New York's limited liability company laws apply and may fill in the gap.  *See Overhoff v. Scarp, Inc.*, 812 N.Y.S.2d 809, 816 (N.Y. Sup. Ct. 2004).

22.     Here, as stated above, the primary question for the Court is whether Elkaim, Halpern, and Schonberg possessed the requisite managerial authority to file, on the Debtor's behalf, the Petition.  Based on the current record, this question should be answered in the negative.

23.     The Debtor's Operating Agreement grants broad powers to CSRE, as the Debtor's Managing Member, to "manag[e] the Premises, arrang[e] a bridge loan, obtain[] permits for construction, building works and refurbishment, secur[e] tenants for the Premises, obtain[] a mortgage after construction is complete and the Premises tenanted [], and manag[e] future tenants and maintain[] the Premises."  (Debtor's Operating Agreement, at ¶ 5(a)(i).)  CSRE, as Managing Member, is also "authorized to execute any and all documents on behalf of the Company necessary or appropriate in connection with the acquisition, financing, operation, management or development of the business and any property of the Company."  (*Id.* at (a)(ii).)  The Debtor's Operating Agreement is, however, silent as to whether CSRE may file a bankruptcy petition and/or what steps, if any, may be required prior to doing so.[8]

---

[8] S III Capital does not challenge the authority of the Debtor's managing member to file a petition. *See, e.g.*, *E. End Dev.*, 491 B.R. 633 (addressing whether LLC's managing member had authority to file petition under operating agreement or state law without consent of fifty-percent member).  Rather, the question here in the first instance is whether Elkaim, Halpern, and Schonberg are managing members of the Debtor.

24.     As for CSRE's replacement as the Debtor's managing member and the designation of Elkaim, Halpern, or Schonberg as co-managers of the Debtor, the Debtor's Operating Agreement is likewise silent.  The closest language in the Debtor's Operating Agreement provides that "[c]hanging the ownership interest in the Premises and or the Company[] and/or re-assigning the Managing Member's authority *over the Premises*" requires the consent of "the Members and the members of CSRE representing at least seventy-eight percent (78%) of the ownership of the Company in the aggregate."  (*Id.* at 5(a)(iv)(2) (emphasis added).)  This provision cannot reasonably be read to govern replacement or reassignment of the Managing Member in total.

25.     As noted above, in such a circumstance, New York law may fill in the gap. *Overhoff*, 812 N.Y.S.2d at 816.  New York's Limited Liability Company Law Section 414 provides that "[e]xcept as provided in the operating agreement, any or all managers of a limited liability company may be removed or replaced with or without cause by a vote of a majority in interest of the members entitled to vote thereon."

26.     Here, no showing has been made that Strulovitch and Oberlander were properly removed as the managing members of Operations LLC, that CSRE was properly removed as the managing member of the Debtor, and that, in turn, Elkaim, Halpern, and Schonberg were properly installed as managing members of the Debtor.  In fact, no information whatsoever is provided about the division of membership interests in Operations LLC or the putative votes by the members in that entity to oust Strulovitch and Oberlander as its managing members.  Likewise, the Debtor's Operating Agreement (at least the most recent form of which S III Capital is aware) reflects that CSRE holds a fifty-four percent (54%) interest in the Debtor and is designated as the Debtor's managing member.  Nothing in the record establishes that a majority interest in the Debtor voted to replace CSRE as the Debtor's managing member.

27.     Accordingly, on this record, Elkaim, Halpern, and Schonberg cannot establish that they had the requisite authority to file a bankruptcy petition on the Debtor's behalf, and this case should be dismissed.  *See NNN 123 N. Wacker*, 510 B.R. at 858; *Raljoed Realty*, 277 F. Supp. at 226.

## II.     The Debtor Filed This Case In Bad Faith Solely To Stall A Duly Noticed Foreclosure Sale, And Thus, The Case Should Be Dismissed.

28.     The Second Circuit has held that cause for dismissal of a bankruptcy case exists for purposes of Bankruptcy Code Section 1112(b) where the debtor filed the case in bad faith or that the circumstances of the case demonstrate attributes of bad faith.  *See In re C-TC 9th Ave. P'ship v. Norton Co.*, 113 F.3d 1304, 1310 (2d Cir. 1997).  The appellate court outlined the following non-exhaustive factors to be considered when determining whether a bad faith filing has occurred:

(1)     the debtor has only one asset;

(2)     the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)     the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)     the debtor's financial condition is, in essence, a two-party dispute between the debtor and a secured creditor which can be resolved in the pending state foreclosure action;

(5)     the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditor to enforce its rights;

(6)     the debtor has little or no cash flow;

(7)     the debtor can't meet current expenses, including the payment of personal property and real estate taxes; and

(8)     the debtor has no employees.

*Id.* at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828, 830 (W.D. Ky. 1992)).  Here, the foregoing factors overwhelmingly support the conclusion that Elkaim, Halpern, and Schonberg filed the Debtor's Petition in bad faith.

29.    As stated in the Petition, the Debtor is a single-asset real estate business, (*see* Petition, at No. 7), and its only asset is a property located at 525 Willoughby Avenue, Brooklyn, New York .  (*See* Elkaim Declaration, at ¶ 5.)

30.    The creditor matrix submitted along with the Petition list only seven (7) potential creditors, one of which appears to be an attorney that is likely owed fees from representing the Debtor prepetition (Yitzchak E. Soloveichik) and four federal and state entities likely owed *de minimis* amounts for either taxes or costs for legal proceedings.  The only other creditors are S III Capital and an entity named Y&D G/C LLC, which is believed to be a general contractor who may have performed some services at the Debtor's property.  (*See* Elkaim Declaration, at ¶ 21 (general contractor left job mid-construction).)  Given this small creditor class, it is highly likely that S III Capital's security interest in the property dwarfs the claims of all other creditors.

31.    The Debtor's only asset has been the subject of a foreclosure action in New York Supreme Court since March 20, 2018, and on September 19, 2019, a judgment of foreclosure was entered in favor of S III Capital.  (*See* Elkaim Declaration, at ¶ 6.)  The statements in the Elkaim Declaration support the conclusion that the Debtor's financial condition is exclusively a two-party dispute between the Debtor and S III Capital regarding the Debtor's failure to repay its mortgage.  (*See id.* at ¶¶ 6, 17, 24-29.)

32.    The timing of the filing of the Debtor's Petition by Elkaim, Halpern, and Schonberg could not make it any more obvious that this bankruptcy case is intended solely to delay and frustrate S III Capital's legitimate efforts to enforce its rights.  Despite the fact that Elkaim, Halpern, and Schonberg had problems with Strulovitch long ago and even sued him in federal court in April 2017 and unsuccessfully tried to intervene in S III Capital's foreclosure action, (*see* Elkaim Declaration, at ¶¶ 22-23), the three took no action with respect to the Debtor or CSRE's status as the

Debtor's managing member until only a "few days" before the bankruptcy filing. (*See id.* at ¶ 30.) The clear impetus for their swift action was entry of a judgment of foreclosure in favor of S III Capital on September 19, 2019, and S III Capital's notice of a foreclosure sale for October 17, 2019. (*Id.* at ¶ 6.) Elkaim readily concedes the motivation for filing this case: "[A] foreclosure sale of the property owned by [the] Debtor is imminent." (*Id.* at ¶ 3."

33.    Although the record remains incomplete to date (perhaps purposely to serve Elkaim's, Halpern's, and Schonberg's purposes here), it is highly likely and can be inferred from the Elkaim Declaration that the Debtor has no cash flow and likely cannot meet its expenses, including the payment of taxes. (*See id.* at ¶ 18 ("[T]he Debtor's ledgers reveal that its bank accounts held almost no money and incurred dozens of overdraft fees. Likewise, the Debtor failed to pay many bills that were due.").)

34.    It is unknown whether the Debtor has any employees, but it seems very unlikely that any employees exist.

35.    In addition to the foregoing recitation of facts relevant to the factors outlined by the Second Circuit in *C-TC 9th Ave.*, 113 F.3d at 1310, the circumstances here include another strong indication that this bankruptcy case was filed in bad faith. In April 2017, Elkaim, Halpern, and Schonberg filed the Federal Action against, among others, Strulovitch and the Debtor. (*See generally* Federal Action; Elkaim Declaration, at ¶¶ 23, 35.) On November 2, 2017, against opposition by Elkaim, Halpern, and Schonberg, Judge Amon granted a motion to compel arbitration of certain plaintiffs' claims and dismissed other plaintiffs' claims without prejudice to the refiling in state court. (*See* Federal Action, ECF No. 257 (Memorandum Opinion and Order).) Elkaim, Halpern, and Schonberg adamantly opposed arbitration on the ground, among others, that the Rabbinic court in which arbitration would occur was biased against them and in favor of

Strulovitch.  (*See id.*, ECF No. 223, at 5 n.3 (arguing Strulovitch's personal Rabbi may serve as arbitrator).)

36.    Having failed in the Federal Action, Elkaim, Halpern, and Schonberg apparently have found a different way to collect from Strulovitch: purport to replace him as managing member of the Debtor and seize control of the Debtor and the Property.  This bankruptcy case appears to be an effort to circumvent Judge Amon's ruling in the Federal Action.  Any such effort, of course, cannot support a finding that this case was filed in good faith.

37.    In light of the above, the Court should dismiss this bankruptcy case and permit S III Capital to proceed with its foreclosure sale.

**III.    In The Alternative To Dismissal Of This Case, The Court Should Grant S III Capital Relief From The Automatic Stay To Proceed With Its Foreclosure Sale.**

38.    Pursuant to Bankruptcy Code Section 362(d), the Court shall grant S III Capital relief from the automatic stay and permit it to proceed with its foreclosure sale "for cause" shown. *See* 11 U.S.C. § 362(d).  "Cause" for purposes of stay relief includes "bad faith," which is analyzed along the same lines as bad faith with respect to dismissal.  *See In re Setzer*, 47 B.R. 340, 344 (Bankr. E.D.N.Y. 1985); *In re AMC Realty Corp.*, 270 B.R. 132, 140-41 (Bankr. S.D.N.Y. 2001); *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  For the same reasons outlined in Part II above, if the Court decides not to dismiss this bankruptcy case, S III Capital nonetheless should be granted relief from the automatic stay in order to enforce its judgment of foreclosure and proceed with a foreclosure sale.

39.    Additionally, S III Capital also is entitled to relief from the automatic stay pursuant to Bankruptcy Code Section 362(d)(2).  Bankruptcy Code Section 362(d)(2) authorizes the court to grant relief from the automatic stay where (a) the debtor does not have any equity in the property, and (b) the property is not necessary for an effective reorganization.  "The legislative purpose

under Bankruptcy Code Section 362(d)(2) is directed toward real property mortgage foreclosures where the petition for relief was filed on the eve of the foreclosure. *See* 124 Cong.Rec. H 11,092-3 (Sept. 28, 1978); S 17,409 (Oct. 6, 1978)." *In re Sulzer*, 2 B.R. 630, 635 (Bankr. S.D.N.Y. 1980); *In re Hutton-Johnson Co. Inc.*, 6 B.R. 855, 860 (Bankr. S.D.N.Y. 1980).

40.    Once the movant establishes that there is no equity in the property, the debtor must establish that the property is essential for an effective reorganization that is in prospect. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 375 (1988). This means that there must be a reasonable possibility of a successful reorganization within a reasonable time. *Id.*

41.    The party seeking relief from the stay has the burden of proof on the issue of lack of equity. 11 U.S.C. § 362(g)(1). The Debtor then has the burden of proof on all other issues, including that the property is necessary for an effective reorganization. *Id.* at (g)(2). "The statutory language is in the conjunctive." *Hutton-Johnson*, 6 B.R. at 860. "It does not follow that because the property is indispensable to the debtor's survival that the property is essential to an 'effective' reorganization. There must also be shown to exist a reasonable possibility of a successful reorganization." *Id.* (citation omitted).

42.    Here, as established above, this bankruptcy case was commenced after the entry of a judgment of foreclosure in favor of S III Capital and only shortly before the scheduled auction sale date. As further established by the Kurman Declaration and Exhibit "1" thereto (the Appraisal Report that S III Capital obtained from CBRE with respect to the Property), CBRE has concluded that the market value of the Property totals $1.85 million, which is less than the approximately $1.90 million in principal, interest and late fees that the Debtor owes to S III Capital. The Debtor's debt to S III Capital is secured by the Property.

43.    Based on the foregoing, S III Capital respectfully submits that it has met its burden of proof that the Debtor has no equity in the Property.  Thus, it is axiomatic for this single-asset Debtor that no effective reorganization can occur and that the Property is not necessary for any such effective reorganization.  Accordingly, this Court should grant S III Capital relief from the automatic stay pursuant to Bankruptcy Code Section 362(d)(2).

## CONCLUSION

44.    The Court should dismiss this bankruptcy case on account of Elkaim's, Halpern's, and Schonberg's lack of authority to file the Petition on the Debtor's behalf and also on account of the fact that this case was filed in bad faith.  Alternatively, if the case is not dismissed, the Court nonetheless should grant S III Capital relief from the automatic stay so that S III Capital may enforce its judgment of foreclosure and conduct a sale of the Property.


Dated: October 29, 2019                       SEYFARTH SHAW LLP
       New York, New York

                                              By:  /s/ Jerry A. Montag
                                                   Jerry A. Montag
                                                   SEYFARTH SHAW LLP
                                                   620 8th Avenue
                                                   New York, NY  10018
                                                   Telephone:  (212) 218-4646
                                                   Facsimile:  (917) 344-1339
                                                   Email:  jmontag@seyfarth.com

                                              *Attorneys for S III Capital LLC*