UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                            Chapter 11

      WILLOUGHBY ESTATES LLC,                      Case No. 19-45886 (CEC)

                   Debtor.
----------------------------------------------------------x

## OBJECTION OF CSRE, LLC AND YECHEZKEL STRULOVITCH TO COMBINED DISCLOSURE STATEMENT AND FIRST AMENDED PLAN OF LIQUIDATION

      CSRE, LLC ("CSRE") and Yechezkel Strulovitch ("Strulovitch") by and through their undersigned counsel, hereby assert this objection to approval of the Combined Disclosure Statement (the "Disclosure Statement,") and First Amended Plan of Liquidation (the "Plan," ECF Doc. No 99-2) filed by the above-captioned debtor Willoughby Estates LLC ("Debtor") on March 30, 2020 and in support thereof respectfully state as follows:

      1.     The Debtor's co-managers are Raphael Barouch Elkaim ("Elkaim"), Binyomin Halpern ("Halpern"), and Binyomin Schonberg ("Schonberg," collectively, the "Federal Action Lead Plaintiffs")).  They commenced this bankruptcy case for the Debtor, and are the lead plaintiffs in an action commenced in April 2017 against the Debtor, CSRE (the Debtor's 48.25% equity holder)[1] and Strulovitch, among others, in the United States District Court for the Eastern District of New York entitled *Schonberg et al. v. Strulovitch et al.*, Case No. 17-cv-2161 (CBA)(RML) (the "Federal Action," a copy of the Second Amended Complaint is attached as Exhibit 1).  The Federal Action Lead Plaintiffs control Willoughby Estates Operations LLC ("Willoughby Operations"), the Debtor's 45% equity holder, which is also a plaintiff in the Federal Action.

---

[1]     There is a dispute as to the amount of CSRE's equity ownership in the Debtor, however, pursuant to a Stipulation and Order in this action, for the purpose of this bankruptcy case only, CSRE's equity in the Debtor was agreed to be 48.25%.

2.      The Federal Action plaintiffs, including the Federal Action Lead Plaintiffs, filed proofs of claim in this case that assert the same claims asserted in the Federal Action.  Although not disclosed in the Disclosure Statement or Plan, in 2017, District Court Judge Amon compelled certain of the plaintiffs, including Willoughby Operations, to arbitrate all of their claims, held that there was no federal jurisdiction over the remaining claims, and dismissed the second amended complaint.  (*See* Exhibit 2 hereto).

3.      The Plan provides (a) for turnover of the Debtor's real property to the mortgagee and (b) for the Plan Administrator to bring the same claims against CSRE and its principals that Judge Amon ordered be arbitrated for the benefit of the purported "Commingling Claimants" which includes the Federal Action Lead Plaintiffs.

4.      The Property is deeply underwater so the secured creditor is likely to recover the property or its proceeds with or without a plan.  The only unsecured creditor is a $17,000 vendor claim.

5.      Thus, the primary purpose of the Plan is to accomplish indirectly what Judge Amon disallowed directly – litigation of the Federal Action in federal court.

6.      The Plan is only the latest of many attempts to avoid arbitration.  The Federal Action Lead Plaintiffs are leading an onslaught of litigation in multiple forums, including a motion for leave a third amended complaint in the Federal Action, and virtually identical claims filed in the Southern District of New York Bankruptcy Court, *In re 53 Stanhope LLC, et al*, Case No. 19-23013 (RDD) (the "SDNY Bankruptcy Proceeding") coupled with a demand that Judge Drain not abstain.  Further, upon information and belief, the Federal Action Lead Plaintiffs are the masterminds behind a state court action pending before Judge Ruchelsman in New York Supreme Court, King County, Index No. 500827/2020 (the "State Court Action") filed by over forty (40)

other alleged investors (not involved in the Federal Action, but part of the Commingling Claimants) one week before the Federal Action Lead Plaintiffs filed their proof of claim.

7.      In summary, the Plan is just one in a series of attempts to avoid arbitration and to find a Court that will entertain a complaint that pleads legal conclusions and name-calling as a substitute for factual allegations.

8.      Moreover, in an absurd attempt to manufacture the appearance that they are acting as fiduciaries for the Debtor's estate, the Federal Action Lead Plaintiffs as the Debtor's co-managers instructed Debtor's counsel to object to their own claims.  (*See* Objection to Claim No. 5, attached as Exhibit 3).  The Plan proposes that a Plan Administrator take over those objections. But they propose that the Debtor's lawyer serve as the Plan Administrator or the Plan Administrator's lawyer.  And the Plan Administrator will be advised by a committee consisting of the co-managers despite the fact that the co-managers will be advising on (a) the prosecution of the objections to their own claims, and (b) the prosecution of their claims against CSRE and its principals that the District Court dismissed and ordered arbitrated.

9.      Given the existence of the Federal Action, State Court Action, and the SDNY Bankruptcy Proceeding, the Court should deny confirmation based on mandatory and permissive abstention.  Having chosen to bring their claims in multiple other forums, this Court should abstain from allowing the purported Commingling Claimants from litigating the same claims in this Court.

10.      The Federal Action Lead Plaintiffs' duplicity is further evidenced by the classification of claims in the Plan.  The Plan gives priority to the equity holders controlled by the Debtor's co-managers (the "Purported Commingling Claimants") over CSRE, the equity holder they purportedly displaced the day before filing this case.  But both must be treated the same under Bankruptcy Code Section 1123.  Indeed, the claim objection they filed as co-managers of the

Debtor against their own claims as "Commingling Claimants" argues that those claims must be subordinated to equity under section 510(b) because the claims arise from a securities transaction. (*See* Exhibit 3). However, their Plan improperly separately classifies the Commingling Claimant claims senior to equity in contradiction to their own claim objection.

11.     By the same token, the Plan mischaracterizes CSRE's equity interest as "Unimpaired/Deemed to Accept." CSRE's interest is impaired because the Purported Commingling Claimants, who should be subordinated, are receiving more favorable treatment under the Plan.

## BACKGROUND

12.     On September 26, 2019, the Debtor filed the instant Chapter 11 petition (the "Petition") under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

13.     The Petition was filed by Raphael Barouch Elkaim ("Elkaim"), Binyomin Halpern ("Halpern"), and Binyomin Schonberg ("Schonberg") as purported co-managers of the Debtor.

14.     CSRE and Willoughby Operations are members of Debtor. Strulovitch is the managing member of CSRE.

15.     Elkaim, Halpern and Schonberg are members of Willoughby Operations and claim to be co-managers of Debtor. (See ECF Doc. No. 1-2).

**The Federal Court Action**

16.     On April 24, 2017, Elkaim, Halpern, Schonberg, Willoughby Operations and other individual and corporate plaintiffs (the "LLC Plaintiffs") sued the Debtor, CSRE, Strulevitch, and the corporate owners of certain investment properties (the "Holding Company Defendants") including Debtor, among others, in the Federal Action. The Federal Action plaintiffs sued several

dozen defendants alleging a "Bernie Madoff" type scheme relating to the properties, and asserted securities law claims, contract claims, tort claims, and equitable claims.

17. The Federal Action plaintiffs include many limited liability companies or "Feeder-Funds" and individual members of those limited liability companies. One of the LLC Plaintiffs is Willoughby Operations.

18. The Holding Company Defendants, including the Debtor, moved (a) to compel arbitration based on operating agreements signed by Strulovitch on behalf of CSRE, the LLC Plaintiffs, and the Holding Company Defendants and certain individual Plaintiffs (the "Holding Company Agreements"), and (b) to dismiss the Federal Action complaint because, among other things, the Holding Company Defendants fulfilled their obligations under the prospectuses by "returning the vast majority of the investment funds."

19. The Holding Company Agreements, including the one governing the Debtor's business, contain arbitration provisions that state:

> In case of any doubt, question or other disagreement among the parties to this agreement about anything pertaining to this Agreement, all of the parties to the disagreement shall choose a third party that is acceptable to all of them as Arbitrator (the "Arbitrator") and ask for his ruling on point, and his ruling shall be accepted by all the parties to the disagreement. If, however, the parties do not reach agreement within forty-five (45) days as to who is to be the Arbitrator, then HaRav Avrohom Baruch Rosenberg of Monsey, New York shall choose the arbitrator for the parties and that Arbitrator's ruling shall be binding on all the parties. In any case, however, all the parties to this agreement agree not to bring any matter relating to this Agreement to a secular court for resolution unless instructed to do so by the Arbitrator or to enforce the Arbitrator's ruling. (*See, e.g.*, Ex. 2 p. 6).

20. The District Court dismissed the second amended complaint on November 2, 2017 (Amon, J.) and vacated notices of pendency that had been filed.

21. With respect to the motion to compel arbitration, the District Court held that "the LLC Plaintiffs and the Individual Plaintiffs who signed a Holding Company Agreement must

arbitrate their claims with respect to the Holding Company Agreement they signed." (Ex. 2 p. 36). This includes the claim brought by Willoughby Operations.  No arbitration was commenced.

22.     The District Court also dismissed the securities fraud claim and declined to exercise supplemental jurisdiction over the remaining claims.  (*See* Ex. 2).

23.     The Federal Action plaintiffs filed a notice of appeal which they later withdrew. Almost two years later, the Federal Action Plaintiffs filed a motion for leave to amend the dismissed complaint, which remains pending at the current time.  (*See* Federal Action ECF Doc. No. 290).

**The State Court Action**

24.     In January 2020, a different group of individual investors brought an action in New York Supreme Court, Kings County (Index No. 500827/2020) against Strulovitch and the Holding Company Defendants, among others.  The State Court Action plaintiffs assert similar claims to those asserted in the Federal Court action.  The defendants have moved to dismiss the State Court Action and that motion remains pending.

**The Motion to Dismiss in this Bankruptcy Proceeding**

25.     At the commencement of this bankruptcy case, there was a dispute as to the identity of the manager of the Debtor.  Elkaim, Halpern and Schonberg claimed to be the managers, while CSRE and Strulovitch claimed that CSRE is the managing member of Debtor.

26.     On November 5, 2019, CSRE and Strulovitch moved to dismiss the Petition on the grounds that the filing by Elkaim, Halpern and Schonberg was unauthorized because they were not the co-managers of Debtor.

27.    By Stipulation and Order entered December 26, 2019, the motion to dismiss was withdrawn "with the same res judicata, collateral estoppel and law of the case effect, in this bankruptcy case only, as if the Motion to Dismiss had been denied." (ECF Doc. No. 54).

28.    By the same Stipulation and Order, CSRE and Strulovitch conceded for the purpose of the bankruptcy case that (a) the bankruptcy case was properly commenced; (b) Elkaim, Halpern and Schonberg are the sole co-managers of Debtor, (c) CSRE was a 48.25% member of Debtor as of the filing of the Petition, and (d) Willoughby Operations, Jacob Schonberg, Bertha Schonberg, Benjamin Schonberg and Binyomim Halpern owned the remaining interests of Debtor as of the filing of the Petition. (*Id.*)

29.    CSRE agreed to withdraw the motion and allow the Federal Action Lead Plaintiffs to serve as co-managers of Debtor for the sole purpose of running this bankruptcy case after the Federal Action Lead Plaintiffs expressly advised that they intended to save the property either by refinancing or through further investment, not to abuse the bankruptcy process by just handing the property to the Mortgagee and pursuing another round of baseless claims against Strulovitch in yet another forum. Had the Federal Action Lead Plaintiffs expressed their true intention, he would never have agreed to the Stipulation.

**The Purported Commingling Claimants' Proof of Claim**

30.    On January 17, 2020, 134 individuals (the "Individual Claimants"), which includes Elkaim, Halpern, Schonberg and all of the individual plaintiffs in the Federal Action and State Court Action, and the LLC Plaintiffs (collectively, the previously defined "Purported Commingling Claimants"), filed a proof of claim in this case. (See Ex. 3). The Purported Commingling Claimants assert that:

> [i]n return for the transmittal of funds, the [Willoughby] Claimants would purchase membership interests in an LLC Claimant [aka the Feeder-Funds]. The [Feeder-

Funds], in turn, were given 45 or 46% interests in one of twenty-two [Investment-Property Holding Companies] that each held title to a respective Investment-Property.    CSRE … owns the remaining 54 or 55 percent in each Holding Company.

(*Id.* Statement of Claim ¶ 2).

31.     All of the claims were filed by the same law firm.  An attorney executed each claim and used the firm's address as the claimant's address.  Every claim was included on a single proof of claim form.  The support for each claim is described in the Statement of Claim, which is attached as Ex. C to the proof of claim (the "Statement of Claim").  (*Id.*)  As the Federal Action Lead Plaintiff's concede, their proof of claim makes no specific allegations against Debtor or any other defendant and contains no evidentiary support.  (*See* Ex. 3 hereto).

32.     One of the LLC Plaintiffs, Willoughby Operations, holds a profit-sharing interest in the Debtor.   Thirty of the Individual Claimants are allegedly members of Willoughby Operations.  The Purported Commingling Claimants filed a virtually identical proof of claim in the SDNY Bankruptcy Proceeding.

33.     The Individual Claimants are Israeli nationals.  The managing members of the LLC Plaintiffs includes Strulovitch, although the Purported Commingling Claimants assert that he was removed as a manager of the LLC Plaintiffs in September 2019.

34.     The claim of the Purported Commingling Claimants is based on the facts alleged in the Federal Action.  The Purported Commingling Claimants make conclusory allegations of "false representations" that Strulovitch allegedly made in prospectuses, but the particulars are not set forth in the Statement of Claim.   There is no allegation that Strulovitch spoke to any of the claimants before they invested.  The Purported Commingling Claimants state that they have claims for unjust enrichment, conversion and securities fraud, which claims Strulovitch denies.  (*See* Statement of Claim attached to Ex. 3).

35.     The District Court has already held that the LLC Plaintiffs' claims must be arbitrated, and plaintiffs do not have securities fraud claims because plaintiffs purchased membership interests in the LLC Plaintiffs.  (*See* Ex. 2).  While the District Court did not address the individual plaintiffs' state law claims, they are invalid for several reasons.

36.     Among other things, the Individual Plaintiffs do not have standing to assert such claims because they are based on the allegation that defendants diverted investment funds earmarked for specific properties to other properties.  Such claims clearly belong to the corporations which are subject to the parties' arbitration agreement.  *See, e.g., Rodolico v. Rubin & Licatesi, P.C.*, 112 A.D.3d 608,610 (2d Dep't 2013) (dismissing claims because "plaintiff does not have standing, individually, to seek the return of funds purportedly borrowed by the defendants); *Elenson v. Wax*, 215 A.D.2d 429,429 (2d Dep't 1995) ("Allegations of mismanagement or diversion of assets by officers or directors for their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually"); *Maldonado v. DiBre*, 140 A.D.3d 1501,1504 (3d Dep't 2016) (finding claims were derivative, not direct "because any right that plaintiffs have to an accounting of monies due to and diverted from the LLCs is derived from their membership in the LLCs").

37.     The conversion and unjust enrichment claims against Strulovitch individually also fail because neither a member nor manager of an LLC is liable for any of the LLC's obligations or liabilities, solely because they are a member or manager.  NY LLC Law § 609(a); *see Collins v. E-Magine, LLC*, 291 A.D.2d 350,351 (1st Dep't 2002); *Stamina Prods., Inc. v. Zintec USA, Inc.*, 90 A.D.3d 10211022 (2d Dep't 2011) (There must be "clear and explicit evidence of the agent's 'intention to substitute or superadd his personal liability for, or to, that of his principal'").

38.    The Statement of Claim also fails to state a claim for conversion because New York law permits claims for conversion of money in very limited circumstances not applicable here. *See Nugent v. Hubbard*, 130 A.D.3d 893,895 (2d Dep't 2015) (requiring "legal ownership or an immediate superior right of possession to a specific identifiable thing and…defendant exercised an unauthorized dominion over the thing in question...to the exclusion of the plaintiff's rights"); *926 Port Chester Mgmt. Grp. LLC v. Slabakis*, 38 N.Y.S.3d 831 (Kings Cnty. 2016) (dismissing conversion claim over funds that were not "specifically identifiable").

39.    Plaintiffs do not have legal ownership or a superior right of possession to the moneys allegedly converted.  Once the plaintiffs invested, they acquired interests in the LLC Plaintiffs, who then acquired a 46% interest in the Holding Company Defendants.  Because the funds which were purportedly converted are not specifically identifiable within the meaning of the law, the conversion claims fail.

**Identical Claims Filed in SDNY Bankruptcy Court**

40.    The Purported Commingling Claimants filed a virtually identical proof of claim in the SDNY Bankruptcy Proceeding.  All of the claims were filed by the same law firm.  An attorney executed each claim and used the firm's address as the claimant's address.  Every claim was included on a single proof of claim form.  The support for each claim (except for the Stern claims in 325 Franklin LLC) is described in a Statement of Claim virtually identical with the one filed in this case.

41.    The Debtors in the SDNY Bankruptcy Proceeding challenged the Purported Commingling Claimants' claims there.  The Statement of Claim there makes no specific allegations against any particular Debtor.  No evidentiary support was submitted for the claim and the amount of the claim was not specified.  The bankruptcy court has not yet ruled on the issue.

**The Disclosure Statement and Plan**

42.     The Plan provides six classes of claims and interests.  Class 1 consists of the secured claim of the mortgagee (the "Mortgagee"), which will be receiving the real property owned by the Debtor, while waiving any deficiency claim and assuming the liabilities of the Debtor for real estate taxes and liens with priority over the Mortgagee's claim.  Class 2 consists of approximately $13,000 in secured claims from the NYS Department of Finance and NYCTL 2019-A Trust.   The Class 2 claims are being assumed by the Mortgagee.  Class 2A is a secured claim of the NYC Office of Administrative Trials for $1,655 and is being paid in full.  Class 3 consists of a single general unsecured claim of Silvercup Scaffolding I LLC in the amount of $16,972.46.  The Debtor intends to resolve this claim and pay the amount of the allowed claim in full.

43.     Class 4 consists of the holders of "Commingling Claims" which refers to the Purported Commingling Claimants as described above.  The Debtor scheduled the claims as disputed and is objecting to such claims according to the Plan to the extent that such claims are not being treated equally with the Class 3 claim.  Debtor's Counsel will serve as the Plan Administrator or the attorney for the Plan Administrator, and the Purported Commingling Claimants will investigate claims against Strulovitch.  (Article 4.4).  The Purported Commingling Claimants will receive a pro rata share of any recovery.

44.     Class 5 under the Plan consists of the equity who will only receive a recovery after the Purported Commingling Claimants.  (Article 4.5).

45.     Section 5.1 provides that on the Effective Date, the Plan Administrator shall, among other things, "prosecute, settle or resolve Disputed Claims", which includes the Purported Commingling Claimants' claim, and assert all causes of action belonging to the Estate.  *See also* Article 5.6(v).

46.     Although the Co-manager Federal Action Lead Plaintiffs were unwilling to fund any property related expenses so that the bankruptcy process could be used to restructure the estate, the co-managers shall be guaranteeing and funding an initial retainer for the Plan Administrator's attorney's fees to bring claims in yet another forum against CSRE and Strulovitch.  (Article 5.8). The Debtor claims it is unaware of any claims to be asserted against any other party but CSRE and Strulovitch.

47.     It is clear that the only purpose of the bankruptcy was to assert such claims; otherwise the Mortgagee could have recovered the property through the completion of the foreclosure process or using a deed in lieu of foreclosure.

48.     As for general unsecured creditors, Debtor's counsel is filing an application for professional fees in excess of $130,000 but has agreed to accept $50,000 and an additional $30,000 from anything remaining after creditors are paid in full.  The Co-Manager Federal Action Lead Plaintiffs have agreed to pay $50,000 of allowed professional fee claims.  This is more than enough money to pay the $17,000 vendor claim, dismiss the case and follow Judge Amon's order, instead of creating a façade of a Chapter 11 plan to litigate a complaint in this Court that Judge Amon already dismissed.

49.     Article 5.10 of the Plan also creates an obvious conflict of interest, which further confirms the Federal Action Lead Plaintiffs' improper objective.  That provision states that as "Co-Managers," the Federal Action Lead Plaintiffs shall provide "advice and consent to the Plan Administrator . . . with respect to the resolution, reconciliation and settlement of the Disputed Claims," *i.e.*, the claims which the Debtor is allegedly challenging against the Purported Commingling Claimants, which includes the Lead Plaintiffs' claims, as well as the claims to be brought against CSRE and Strulovitch.

50.    Under Section 10.2, only members of Classes 2 through 4 may vote on the Plan.

**Debtor Objects to Purported Commingling Claimants' Proof of Claim**

51.    On April 6, 2020, the Federal Action Lead Plaintiffs as the Debtor's co-managers instructed Debtor's counsel to object to their own claims (the "Claim Objection").  (*See* Ex. 3). Through that claim objection, the Federal Action Lead Plaintiffs concede that the District Court in the Federal Action required arbitration for claims being asserted by the Purported Commingling Claimants, and held there was no federal jurisdiction for their claims.  (*Id.* ¶ 1).

52.    The Federal Action Lead Plaintiffs as co-managers also concede that their proof of claim "substantially mirrors" the allegations in the Federal Action, that their proof of claim contains no evidentiary support, and that their claims should be subordinated pursuant to 11 U.S.C. § 510(b) because they arise from the purchase of a security of the Debtor or an affiliate of the Debtor.  (*Id.* ¶¶ 3-5).

## OBJECTION

I.    **The Plan is Not Confirmable Under 11 U.S.C §§ 1129(a)(1), 1129(a)(4) and 1129(b)(1) Because It Misclassifies Claims, Does Not Provide for Equal Treatment of Claimants that Should Be in the Same Class, and Unfairly Discriminates Against Equity Holders**

53.    The Federal Action Lead Plaintiffs' duplicity is clearly demonstrated by their improper classification of claims in the Plan.  The Debtor, as the proponents of the Plan, bears the burden of demonstrating that each element of section 1129(a) of the Bankruptcy Code has been satisfied. *See, e.g., In re Arnold & Baker Farms*, 177 B.R. 648, 654 (BAP 9th Cir. 1994); *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000).  The Debtor bear both the burdens of production and persuasion on these issues. *See, e.g.*, 7 Collier on Bankruptcy ¶1129.02[4] (15th ed. 2005) ("[T]he proponent bears the burden of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied").

54.     In addition, the Debtor must demonstrate that the Plan satisfies the provisions of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence.  *See Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprises., Ltd. II (In re Briscoe Enterprises., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Kent Terminal Corp.*, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994) ("the final burden of proof at ... [the] confirmation hearing remains a preponderance of the evidence.").

55.     Pursuant to section 1129 of the Bankruptcy Code, a chapter 11 plan may not "discriminate unfairly." 11 U.S.C. § 1129(b)(1); *see also* 11 U.S.C. § 1129(a)(4). Stated simply, "[c]reditors with claims of equal rank are entitled to equal distribution."  *In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850, 863 (Bankr. S.D. Tex. 2001) (explaining that "the unfair discrimination provision promotes intra-priority fairness, assuring equitable treatment among creditors who have the same level of priority.") (emphasis added); *see also In re Barney & Carey Co.*, 170 B.R. 17, 25 (Bankr. D. Mass. 1994) (stating that although unfair discrimination is not defined in the Bankruptcy Code, the legislative history implies it is meant to protect creditors against unfair discrimination between classes of claims with the same priority).

56.     As such, a plan discriminates unfairly if similar claims are treated differently without a reasonable basis. *See In re Hoffinger Indus., Inc.*, 321 B.R. 498, 505 (Bankr. E.D. Ark. 2005); *In re Barney & Carey Co.*, 170 B.R. at 25 (explaining that discrimination "must be fair and supported by a rationale basis"); *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 898 (9th Cir. 1994) (finding unfair discrimination where a plan gave 100% to an unsecured trade creditor but only 10% to a deficiency claim).

57.     In this instance, the Plan gives priority to the equity holders controlled by the Debtor's co-managers, *i.e.*, the Purported Commingling Claimants, over CSRE, the equity holder

they purportedly displaced the day before filing this case.  However, the claims of the Purported

Commingling Claimants must be subordinated and treated as equity interests under Section 510(b)

of the Bankruptcy Code requiring *pari passu* treatment with the equity interests of Class 5.

58.    Under section 510(b) of the Bankruptcy Code, claims arising from the "sale of a

security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale

of such a security. . . shall be subordinated to all claims or interests that are senior to or equal the

claim or interest represented by such security."

59.    Here, paragraph 2 of the Statement of Claim, like the Federal Action complaint,

asserts that the claims of the Purported Commingling Claimants arise from false representations

in certain prospectuses that induced them to purchase membership interests in separate limited

liability companies (known as the "Investor LLCs" in the Federal Action complaint), each of

which, in turn, received a 45% or 46% interest in a Holding Company."  (*See* Ex. 3, Statement of

Claim).

60.    At paragraphs 2 and 3 of the Statement of Claim, the claimants identify Strulovitch

as the owner and manager of the Holding Companies, which includes the Debtor (as well as the

Investor LLCs).

61.    A membership interest in a limited liability company is a security under section

101(49) of the Bankruptcy Code.  *See In re Tristar Esperanza Properties, LLC*, 782 F.3d 492 (9th

Cir. 2015).  The Statement of Claim alleges damages arising from the claimants' intended purchase

of interests (i.e. securities) in Holding Companies, including the Debtor.  Because Strulovitch

through CSRE owns or controls more than 20% of the Debtor (as well as the other corporations

referenced in the Statement of Claim), they are affiliates as defined by section 101(2) of the

Bankruptcy Code.

Case 1-19-45886-cec    Doc 109    Filed 05/11/20    Entered 05/11/20 16:59:31

62.    In *In re Lehman Bros. Inc.*, 503 B.R. 778, 782–83 (Bankr. S.D.N.Y.), *aff'd on other grounds*, 519 B.R. 434 (S.D.N.Y. 2014), *aff'd*, 808 F.3d 942 (2d Cir. 2015), the court explained the rules for applying section 510(b) as follows:

> The Court of Appeals for the Second Circuit along with the bankruptcy courts within the Second Circuit have uniformly applied a "broad interpretation of section 510(b)." *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 255 (2d Cir.2006) (*citing In re Enron Corp.*, 341 B.R. 141, 162–63 (Bankr.S.D.N.Y.2006) and *In re PT–1 Commc'ns, Inc.*, 304 B.R. 601, 610 (Bankr.E.D.N.Y.2004)); *KIT Digital, Inc. v. Invigor Group Ltd. (In re KIT Digital, Inc.)*, 497 B.R. 170, 181 (Bankr.S.D.N.Y.2013) ("While I certainly agree that other Circuits have construed section 510(b) broadly, so has the Second Circuit, along with bankruptcy and district court judges in the Second Circuit."). The inclusion of the word "shall" in the statute mandates subordination for claims meeting the criteria set forth in the statute.

63.    *Lehman* concluded that where, as here, claims arise from the sale of a "security" of an "affiliate" as defined in the Bankruptcy Code, "The language is clear on its face and applies to these claims." *Lehman*, 503 B.R. at 788.

64.    Indeed, the claim objection the Federal Action Lead Plaintiffs filed as co-managers of the Debtor against their own claims as "Commingling Claimants" concedes that those claims must be subordinated to equity under section 510(b) because the claims arise from a securities transaction.  (*See* Exhibit 3).  Yet, their Plan improperly separately classifies the Commingling Claimant claims senior to equity in contradiction to their own claim objection.

65.    To the extent they may be Allowed, all of the claims of the Purported Commingling Claimants must be subordinated and treated, at most, the same as the equity interests in Class 5. By giving priority over Class 5 to the Purported Commingling Claimants, the Plan unfairly discriminates against shareholders and is not confirmable.

66.    By the same token, the Plan mischaracterizes CSRE's equity interest as "Unimpaired/Deemed to Accept."   CSRE's interest is impaired because the Purported

Commingling Claimants, who should be subordinated, are receiving more favorable treatment under the Plan.

67.    Section 1123, governing the contents required for a plan, provides that a plan must designate classes of claims and specify the treatment of any class of claims that is impaired under the plan. *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1353 (5th Cir. 1989).

68.    Because the Purported Commingling Claimants should be treated the same as equity, Class 5 is "impaired" and entitled to vote on the Plan contrary to the treatment set forth in the Plan.

## II.    The Plan Should Not Be Confirmed Because It Provides for Blatant Conflicts of Interest and Was Not Proposed in Good Faith

69.    Pursuant to Section 1129(a)(3) of the Code, a Plan must be proposed in good faith (which would include all proponents and sponsors thereof).  The Plan has not been proposed in good faith.  The Plan is a transparent attempt to improperly use the bankruptcy process to forum shop and assert claims against CSRE and Strulovitch that are already being litigated in four other forums.

70.    As shown above, the Debtor has structured the Plan in a way that unfairly discriminates in order to give priority to claims of individuals who control the Debtor and will control the Plan Administrator.  The reason that the Plan improperly classifies the claims of the Purported Commingling Claimants is obvious.  The Debtor's co-managers for the purpose of this bankruptcy who have been dictating the actions taken by Debtor and its counsel are the Federal Action Lead Plaintiffs.

71.    The Plan then mischaracterizes CSRE's equity interest as "Unimpaired/Deemed to Accept."  CSRE's interest is impaired because the Purported Commingling Claims, which should

17

be subordinated, are receiving more favorable treatment under the Plan. *See In re Coram Healthcare Corp.*, 271 B.R. 228, 232 (Bankr. D. Del. 2001) (confirmation of debtor's plan denied for failure to satisfy good faith requirements of Section 1129(a)(3) where debtor's CEO had an undisclosed agreement with one of debtor's largest creditors).

72.    In a disguised attempt to manufacture the appearance that they are acting as fiduciaries for the Debtor's estate, the Federal Action Lead Plaintiffs as the Debtor's co-managers instructed Debtor's counsel to object to their own claims. (*See* Objection to Claim No. 5, attached as Exhibit 3). The Plan proposes that a Plan Administrator take over those objections. But they propose that the Debtor's lawyer serve as the Plan Administrator or the Plan Administrator's lawyer. And the Plan Administrator will be advised by a committee consisting of the co-managers despite the fact that the co-managers will be advising on (a) the prosecution of the objections to their own claims, and (b) the prosecution of their claims against CSRE and its principals that the District Court dismissed and ordered arbitrated.

73.    While the Debtor pretends to be impartially objecting to the claims filed by the Purported Comingling Claimants, the Debtor is controlled by the Federal Action Lead Plaintiffs, as will the Plan Administrator, which is a blatant conflict of interest.

74.    Moreover, the Federal Action plaintiffs, including the Federal Action Lead Plaintiffs, filed proofs of claim that are flatly contradicted by the Claim Objection that the Federal Action Lead Plaintiffs directed the Debtor to file against their own claim.

75.    In the Claim Objection, the Federal Action Lead Plaintiffs as the co-managers of Debtor concede that their claim is invalid. As the Claim Objection argues, no evidentiary support was provided for the claims, and the claimants did not quantify their claims.

76.    Under Bankruptcy Rule 3001, the Purported Commingling Claimants' proof of claim is invalid.  Bankruptcy Rule 3001(a) requires that "[a] proof of claim shall conform substantially to the appropriate Official Form."  Moreover, Bankruptcy Rule 9009 requires that the Official Forms "shall be observed."

77.    The official form referred to in Rule 3001(a) is Form 10.  Form 10 instructs the preparer to provide the creditor's name and address and the basis for the creditors claim.  Specifically, a proof of claim must include "the name of the person or entity asserting a claim," "the total amount owed to the creditor on the date of the [b]ankruptcy filing," and how the debt was incurred.  Form 10 also instructs creditors to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages and security agreements" or a summary of such documents. Further, Form 10 states that "[i]f the documents are not available, please explain."

78.    "Attaching supporting documentation is a mandatory prerequisite to establishing a claim's prima facie validity."  *In re Taylor*, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007).  A creditor cannot substantially comply with Form 10 by filing a proof of claim without any documentation or, at the very least, an explanation for why such documents are unavailable."  *See In re Gilbreath*, 395 B.R. at 362–63. "The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense." *In re Armstrong*, 320 B.R. 97, 104 (Bankr.N.D.Tex.2005).

79.    A proof of claim that fails to comply with Bankruptcy Rule 3001 is deprived of prima facie validity.  *In re Rally Partners, Ltd. P'ship*, 306 B.R. 165, 168 (Bankr.E.D.Tex.2003); *see also First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J. Dairy, Inc.)*, 112 B.R. 297, 300 (W.D.Ark.1989) ("A proof of claim does not qualify for prima facie evidentiary effect if

it is not executed and filed in accordance with the Bankruptcy Rules.").  It is the claimant's burden to allege facts in the proof of claim that are sufficient to support the claim. *In re Rally Partners*, 306 B.R. at 168.

80.    The claims of the Purported Commingling Claimants do not state the outstanding amount claimed by each Claimant.  Nor do they provide documentation or an explanation for the absence of documentation to support the claim.  They do not state when the claims arose or the legal theories upon which the claims are based.  The Statement of Claim alleges no specific facts to support the conclusory allegations of diversion of money from the Holding Company Debtors. It is not even possible to determine the applicable statute of limitations.  The claims therefore lack prima facie validity and should be expunged.

81.    The Federal Action Lead Plaintiffs concede all this in the Claim Objection, but then they propose a Plan that not only credits those claims but schedules them as senior to the other equity holders.

82.    The Purported Commingling Claimants' claims are also invalid because they combine direct claims on the investors' personal behalf with derivative claims on behalf of the entities through which they invested, which is an impermissible conflict of interest.  *See, e.g., Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223 (E.D.N.Y. 2005) (stating that "[a]ny individual claims raised by a shareholder in a derivative action present an impermissible conflict of interest."); *Wall St. Sys., Inc. v. Lemence*, 2005 WL 292744, at *3 (S.D.N.Y. Feb. 8, 2005) (stating that "an individual shareholder has a conflict of interest, and therefore cannot adequately represent other shareholders, when he simultaneously brings a direct and derivative action, as Lemence has done here"); *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 2006 WL 2849783, at *7 (S.D.N.Y. Oct. 4, 2006) ("Courts in this Circuit have long found that plaintiffs attempting to advance derivative

and direct claims in the same action face an impermissible conflict of interest."); *Priestley v. Comrie*, *2007* WL 4208592, at *6 (S.D.N.Y. Nov. 27, 2007) (holding that "[h]er attempt to advance derivative and direct claims in the same action is an impermissible conflict of interest that disqualifies her from maintaining this action").[2]

83.     Here, the Claims are asserted by 134 individuals and approximately 23 so-called "Investment LLCs" (otherwise known as the LLC Plaintiffs), of which the individuals are purportedly members.  The claims are identical in that each seeks damages based on the same vague direct and derivative claims.  Just as this would be improper in a formal complaint, it is improper in a bankruptcy case.  *See In re Cont'l Airlines Corp.*, 64 B.R. 874, 880 (S.D. Tex. 1986) (disallowing proofs of claim brought by purported creditor representative because, among other things, the claims "duplicate or overlap the claims filed by the individuals").

**III.    The Court Should Reject the Plan Because the Bankruptcy Court Should Abstain From Presiding Over Claims Brought Against CSRE and Strulovitch**

84.     The lack of good faith is further demonstrated by Debtor's attempt to accomplish indirectly what Judge Amon disallowed directly – litigation of claims against CSRE and Strulovitch in federal court.

85.     Although not disclosed in the Disclosure Statement or Plan, in 2017, Judge Amon compelled certain of the plaintiffs, including Willoughby Operations, to arbitrate all of their claims, held that there was no federal jurisdiction over the remaining claims, and dismissed the second amended complaint.  (*See* Exhibit 2 hereto).

---

[2]      New York law is the same.  *See Abrams v. Donati*, 66 N.Y.2d 951, 953-54 (1985) (dismissing complaint because it combined derivative claims for injuries to the corporation with individual claims); *Barbour v. Knecht*, 296 A.D.2d 218, 227-28, 743 N.Y.S.2d 483, 491 (1st Dep't 2002) ("The  mingling of derivative claims and individual claims requires dismissal of the causes of action so affected.").

86.     The Plan provides (a) for turnover of the Debtor's real property to the Mortgagee and (b) for the Plan Administrator to bring the same claims against CSRE and its principals that Judge Amon ordered be arbitrated and dismissed.

87.     The Property is deeply underwater so the secured creditor is likely to recover the property or its proceeds with or without a plan.

88.     Thus, the central purpose of the Plan is to circumvent Judge Amon's decision.  This is the latest of many attempts by such claimants to avoid arbitration.  The Federal Action Lead Plaintiffs are leading an onslaught of litigation in multiple forums.  Given the existence of the Federal Action, State Court Action, the SDNY Bankruptcy Proceeding, along with Judge Amon's ruling that certain claims must be arbitrated, the Court should deny confirmation based on mandatory and permissive abstention.  Having chosen to bring their claims in multiple other forums, this Court should abstain from allowing the Purported Commingling Claimants from litigating the same claims in this Court.

89.      Under principles of comity alone, this Court should abstain and require the Purported Commingling Claimants to arbitrate their claims as ordered in the Federal Action, or litigate in the Federal Action and State Court Action to prosecute their claims if permitted. *See In re Briarpatch Film Corp.*, 281 B.R. at 829-30.

90.     Moreover, the Court should deny confirmation because the abstention doctrine applies either under mandatory or permissive abstention.  28 U.S.C. § 1334(c)(2) provides that bankruptcy courts must abstain from hearing a state law claim if the following requirements are met: (1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

91.    All of these elements are satisfied here.  The District Court has already ruled there is no independent federal jurisdiction.  The Purported Commingling Claimants' claims are non-core.  The State Court Action is being currently litigated.

92.    With respect to whether the action can be timely adjudicated in state court, courts have found that the Commercial Division of New York Supreme Court, where the State Court Action is pending, timely adjudicates cases.  *BGC Partners v Avison Young (Canada), Inc.*, 919 F. Supp. 2d 310, 320 (S.D.N.Y. 2013) ("there is no foreseeable significant difference in the comparative speed of [a federal court] and the Commercial Division" of the New York State Court).  Moreover, because the Debtor is proposing a liquidating plan, "the requirement of timely adjudication is seldom significant." *See In re United Container LLC,* 284 B.R. 162, 175 (Bankr. S.D. Fl. 2002).

93.    Even if abstention were not mandatory here (and it is), the Court should still abstain under § 1334(c).  In such cases, courts have considered these twelve non-dispositive factors: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which [non-bankruptcy] law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable [non-bankruptcy] law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing [non-bankruptcy] law claims from core bankruptcy matters to allow judgments to be entered in [non-bankruptcy] court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one

of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.  *In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009).

94.     Here, the claimants are clearly engaging in repeated forum shopping.  The Debtor was content to file its complaint and litigate the same facts and theories in the Federal Action until the motion to compel arbitration was granted.  In similar circumstances, abstention is routine.  *See Osuji v. Fed. Nat'l Mortg. Ass'n*, 571 B.R. 518, 524 (E.D.N.Y. 2017); *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011); *Portrait Corp.*, 406 B.R. at 643; *In re Taub*, 417 B.R. 186, 197 (Bankr. E.D.N.Y. 2009).

95.     The other relevant permissive abstention factors support the same result.

96.     On the efficient administration of the estate, the other courts already have a long learning curve.  The courts in the Federal Action and State Court Action are eminently familiar with the facts and legal theories of the proposed action.  Since the other courts are already adjudicating the substantive issues, whereas the Bankruptcy Court would have to start from scratch, efficient administration supports abstention.  *Id.*

97.     On the predominance of state law issues, the claims are all state law claims, which supports abstaining from hearing them.  As the Court held in *In re Riverside Nursing Home*, 144 B.R. 951, 956-57 (S.D.N.Y. 1992): "Courts have generally indicated that state courts are better able to respond to actions primarily involving state law . . ."; *see also In re Comtek Elec., Inc.*, 23 B.R. 449, 451 (Bankr.S.D.N.Y.1982); *In re Wild Oaks Util., Inc.*, 18 B.R. 959, 964 (Bankr.S.D.N.Y.1982).

98.     Adjudication of the proposed proceeding requires the application of various New York state complex business law issues.  Disputes arising under this body of law are most

efficiently and appropriately determined by state courts. *See Moos v. Wells*, 585 F.Supp. 1348 (S.D.N.Y.1984); *Jaffe v. Clarke*, 566 F.Supp. 1500, 1502 (S.D.N.Y.1983), *aff'd*, 742 F.2d 1436 (2d Cir.1984).

99.    Regarding this Court's jurisdiction, this Court merely has "related to" jurisdiction under 28 U.S.C. § 1334.  None of the causes of action are "core" bankruptcy claims, an additional factor supporting abstention.

100.    The last relevant factor is the right to a jury trial.  Here, the Plaintiffs have demanded a jury trial (*see* Ex. 1 p. 1), which this Court cannot conduct.  That is reason alone to abstain.

101.    In summary, this case involves non-bankruptcy claims which have been pending in other courts for years.

## CONCLUSION

WHERREFORE, CSRE and Yechezkel Strulovitch respectfully request that the Court deny confirmation of the Plan, and that the Court grant such other relief as may be just and proper.

Dated: New York, New York
        May 11, 2020                          KOFFSKY SCHWALB, LLC

                                             By: /s/Efrem Schwalb
                                             349 Fifth Avenue, Suite 733
                                             New York, New York 10016
                                             Tel.: (646) 553-1590
                                             E-mail: eschwalb@koffskyschwlb.com
                                             *Attorneys for CSRE, LLC and Yechezkel*
                                             *Strulovitch*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re                                                    Chapter 11

    WILLOUGHBY ESTATES LLC,                Case No. 19-45886 (CEC)

              Debtor.
--------------------------------------------------------------x

## VERIFICATION

I, YECHEZKEL STRULOVITCH, declare under penalty of perjury under the laws of the United

States of America, pursuant to 28 U.S.C. § 1746, as follows:

    1.     I am the managing member of CSRE, LLC.  The facts contained in the annexed

OBJECTION OF CSRE, LLC AND YECHEZKEL STRULOVITCH TO COMBINED

DISCLOSURE STATEMENT AND FIRST AMENDED PLAN OF LIQUIDATION are true and

correct to the best of my knowledge.

Executed:    May 11, 2020
             Brooklyn, New York

                              YECHEZKEL STRULOVITCH

26